

Mailing Address:
151 T Street, NE
Washington, DC 20005



**SUBCONTRACT AGREEMENT**
PHONE: (301) 340-2290
ATTN: Bo Perrow
Combustioneer Corporation
643 Lofstrand Lane
Rockville, MD
20850

MADE BETWEEN

Dated: 7/1/2002
Davis / HRGM Joint Venture

Project Manager: Julie Kirkwood
Project Supt: Dennis Lewis
Job Phone: 301-674-4854 (cell)

**THE SUBCONTRACTOR**

**1. THE PROJECT**
Contract Number: 14-1958 / 16-000
Job Name: McKinley High School - DACW31-02-C-0021
Location: 151 T Street, NE
Washington, DC 20002

**2. THE WORK**
Subcontractor shall furnish anything necessary to complete in place the **Electrical/Fire Alarm/Tele/Data/Security work** in strict accordance with the Contract Documents.

**3. INSURANCE**
The Subcontractor shall indemnify, save harmless, and defend DAVIS/HRGM and the Owner from any and all loss, damage, cost expenses and attorney's fees suffered or incurred on account of any injury to or death of any person, damage or destruction of any property, arising out of or resulting from or in connection with the execution of the work. Said indemnity shall be insured by an acceptable insurance carrier naming DAVIS/HRGM as an additional insured for the limits of :
Comprehensive General Liability Insurance
  Each Occurrence         $1,000,000
  Aggregate               $2,000,000
  (Includes a per project aggregate)
Worker's Compensation (No requirement for additional named insured) $ Statutory Limits
Employer's Liability Insurance
  Each accident injury limit    $100,000
  Policy limit for disease      $500,000
  Each employee for disease     $100,000
Vehicular Liability Insurance for all vehicles used by Subcontractor, its servants, agents, Subcontractors, and suppliers on job site.
  Combined single limit         $1,000,000
Explosion, Collapse & Underground   $N/A
Umbrella / Excess Liability         $5,000,000

The general liability policy must indicate that the coverage is primary and non-contributory to any insurance of the insureds. It should also indicate a per project aggregate applies.
Policies may not be cancelled without adequate substitution prior to cancellation. The Subcontractor shall submit insurance certificates to DAVIS/HRGM prior to commencement of work, but in no event later than (60) days after signing contract. DAVIS/HRGM is to be given thirty (30) days written notice of cancellation of any policy.

**THE CONTRACTOR**

**4. BONDS**
Contract price includes the sum of $34,125.00 to cover the Subcontractor's cost for the bond. The Subcontractor shall furnish a performance and payment bond in satisfactory form and substance, when surety's consent to changes in price and time of performance necessary to conform to Prime Contract requirements. Furnishing of said bond shall be a condition precedent to Contractor's obligation to release partial payments.

**5. THE CONTRACT DOCUMENTS**
The contract documents for this Subcontract consist of this Agreement and the following listed documents:

| Item # | Description | Date |
|---|---|---|
| Exhibit A | Job Safety Standards | 4/2/2001 |
| Exhibit B | General Scope of Work | 6/20/2002 |
| Exhibit C | Trade Scope of Work | 6/10/2002 |
| Exhibit D | Construction Schedule | 6/13/2002 |
| Exhibit F | Contract Drawings and Specifications | |
| Exhibit J | Application for Payment | |



EXHIBIT B

**6. SPECIAL NOTES**
  a) Unless otherwise stated, applications for payment for work projected through the end of the month are due in our office, in original form, not later than the 25th of each month. Should the 25th not occur on a business day, applications for payment are due the preceding business day.
The complete set of submissions for Architect / Engineer approval shall be submitted by the Subcontractor to the Contractor no later than 7/16/02, and shall include without limitation at least the following items: per Spec

  b) All documents previously provided, attached to this subcontract or those yet to be provided that have the DAVIS logo and address are to be considered as being from the DAVIS/HRGM Joint Venture.

**7. THE CONTRACT SUM**
The Contractor shall pay the Subcontractor in current funds for performance of this Contract:
**Five Million Eight Hundred Fifty Four Thousand One Hundred Twenty Five and 00/100 Dollars ($5,854,125.00)**
in partial payments as hereinafter described.

8. **FLOW DOWN RELATIONSHIP**
The Subcontractor is bound to Davis / HRGM Joint Venture (DAVIS/HRGM) in the same way DAVIS/HRGM is bound to the Owner and shall bear all rights and liabilities with respect to DAVIS/HRGM as DAVIS/HRGM has with respect to the Owner, except that this Subcontract shall govern any inconsistent provision of the Prime Contract.

9. **PRICE AND PAYMENT**
The Subcontract price shall be paid in partial payments, when received by DAVIS/HRGM from the Owner, to Subcontractor in trust for the payment by Subcontractor for work in place and material on jobsite. Ten percent (10%) retention shall be withheld until final payment is due, except that retainage will be reduced when and to the extent the Owner's retainage withheld from DAVIS/HRGM is reduced. Final payment shall be due after completion of all work, acceptance by the Owner, compliance with all Subcontract obligations, and receipt of final payment from the Owner, which items shall be conditions precedent to the making of final payment to Subcontractor. DAVIS/HRGM is entitled to proof of payment for labor, material, and services used before any payment due. Material paid for shall belong to DAVIS/HRGM, but shall remain in the care, custody, and control of Subcontractor and stored at Subcontractor's risk. Subcontractor shall furnish guarantees and all other documents required by the Prime Contract for the Subcontractor's work, including releases as a condition precedent for payment. Liquidated damages withheld by Owner will be assessed against Subcontractor for delay attributable to Subcontractor's fault. The Subcontractor shall itemize the contract price as a basis for establishing value of work completed and partial payments.

10. **SHOP DRAWINGS, SAMPLES, AND DATA SUBMISSIONS**
All submittals such as shop drawings, catalogs, samples, and material lists required by Prime Contract which pertain to this work shall be furnished complete and timely. Subcontractor shall be responsible for delays because of failure to do so and for any deviation from plans and specifications. All deviations from the Prime Contract documents must be noted clearly on the submittals, and by separate cover letter the Subcontractor shall state reasons for the deviation and refer to the applicable contract provision.

11. **TIME IS OF THE ESSENCE** – Subcontractor shall proceed with work at such time and in such sequence as DAVIS/HRGM may direct, including overtime performance as necessary and as required by Schedule of Progress, which may be subject to change as working conditions require. If overtime is required solely to accelerate project completion, it shall be authorized in writing and be paid for by DAVIS/HRGM. Payments due may be withheld to insure timely progress and completion of work. The Subcontractor shall be liable for all losses and damages incurred by DAVIS/HRGM (including consequential damages) due to inexcusable delay of the Subcontractor in the performance of the work, including delays costs not reimbursable from the Owner due to inexcusable incurred delays of the Subcontractor.

12. **EXTENSIONS OF TIME** – Subcontractor shall be entitled to an extension of time for performing and completing the work covered by this agreement upon the same terms and conditions an extension of time is allowable and only to the extent actually allowed to DAVIS/HRGM by Owner, or its representative, under the terms of the Prime Contract. Notice of the excusable delay shall be given to DAVIS/HRGM in writing within three (3) calendar days from the beginning of said delay in order that DAVIS/HRGM may in turn notify the Owner, and if not given timely, said excusable delay may be considered waived. The Owner's decision, or its representative, with regard to the delay, including the assessment of liquidated damages, shall be binding upon and chargeable to the Subcontractor, subject only to the disputes procedure provided in the Prime Contract.

13. **DAMAGES FOR DELAY** – DAVIS/HRGM shall not be liable to Subcontractor for unforeseeable delay occurring beyond DAVIS/HRGM's control or for delay caused by Owner or other subcontractor. Subcontractor shall be entitled to reimbursement for any damages for delays recovered from the Owner only, and the Subcontractor shall have the right, at its expense, against the Owner to exercise all provisions of the Prime Contract to recover said damages. Time extension only shall be granted for delays caused solely by DAVIS/HRGM.

14. **SCHEDULE** – DAVIS/HRGM intends to schedule this project using CPM Schedule techniques. In such event, Subcontractor agrees to meet with the Contractor and to provide the necessary detailed information to properly depict activities, including their costs and duration, at no additional cost to the Contractor. All such data shall be provided within fifteen (15) days of DAVIS/HRGM's written notice and request.

15. **DEFAULT TERMINATION** -- The following shall be deemed a breach of this Agreement: Failure to fulfill any obligation of this Subcontract or of the Prime Contract concerning the Subcontractor's work or responsibilities; failure to pay for labor and material, payroll taxes, contributions, or insurance premiums; interference with the performance of the work by others for any reason; and an act of bankruptcy. If the Subcontractor breaches the Subcontract, DAVIS/HRGM may terminate Subcontractor's right to proceed upon three (3) days written notice. DAVIS/HRGM may then have the work completed and may use Subcontractor's material, supplies, tools, and equipment to complete. Subcontractor and its surety shall continue liable for all costs to complete and any damages and expenses including reasonable counsel fees, liquidated damages assessed by Owner and other liabilities which may result from the default and breach, without waiver or any other rights or remedies available to DAVIS/HRGM, including right of setoff and collection of any funds which may be due to Subcontractor under other subcontracts with DAVIS/HRGM.

16. **EXTRA WORK** – Only extra work authorized by DAVIS/HRGM as an extra or change in writing shall be paid for. If the extra work direction does not originate from Owner's direction and there is no prior agreement on price, then Subcontractor shall be paid for the costs of said work plus fifteen percent (15%) for overhead, profit, supervision, and small tools, which will constitute the entire amount due the Subcontractor for the extra work.

17. **OWNER CHANGES** – Changes ordered by Owner shall be performed and paid for in accordance with the terms of the Prime Contract, including all rights of dispute and appeal, provided reservation and exercise of said rights do not interfere with the progress of the work.

18. **CONTRACT INTERPRETATION** -- DAVIS/HRGM interpretation of contract requirements shall be binding upon Subcontractor and complied with, except that Subcontractor shall have the right to claim adjustment of the contract because of said interpretation, if claim in writing is made within five (5) days after ruling and direction.

19. **DISPUTES** – Disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract.

Subcontractor shall have the right to exercise those rights at its sole cost and shall be bound thereby. DAVIS/HRGM shall have no direct liability except to give Subcontractor opportunity to exercise rights in the Prime Contract. Disputes with DAVIS/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association. Disputes shall not interfere with the progress of the job. Work shall proceed as ordered, subject to claim.

20. **BACKCHARGES** – All charges and backcharges assessed by DAVIS/HRGM against Subcontractor shall be deemed accepted unless rejected in writing within thirty (30) days.

21. **PLANT AND CLEANUP** – Subcontractor shall provide its own plant and facilities, including scaffolding and hoists, do its own cleanup, and repair or replace damaged, defective, and defaced work caused by its own negligence. The Subcontractor shall cleanup and remove from the site all of its rubbish, debris, etc., on a daily basis, unless DAVIS/HRGM directs otherwise. Upon completion of the subcontract work, all Subcontractor's materials, equipment, etc., must be immediately removed from the jobsite by Subcontractor. Failure to comply will permit DAVIS/HRGM to do so and backcharge Subcontractor for the cost. If Subcontractor uses DAVIS/HRGM's hoist, scaffolding, or facilities, it will be responsible for the operating expenses of such equipment when in use for Subcontractor's benefit.

22. **BANKRUPTCY AND DELINQUENT TAXES** – In the event of any act of bankruptcy or Subcontractor creditor claim against DAVIS/HRGM or its surety, or notice of levy involving delinquent taxes, DAVIS/HRGM shall have the right to withhold payments and apply the same to secure performance of the Subcontract without prejudice to all other rights against Subcontractor or its surety.

23. **RESPONSIBILITY FOR WORK IN PLACE** – The Subcontractor shall check all work performed by others as is necessary to "receive" the Subcontractor's work. Failure to give notice of any discrepancy shall relieve DAVIS/HRGM of any responsibility therefor. The Subcontractor shall be responsible for all field measurements and shall check elevations and grades to insure proper fitting of its work. It shall not be incumbent upon DAVIS/HRGM to discover any mistakes, errors, omissions, or deviations from the contract requirements in the subcontract drawings, and the Owner's final approval of drawings made by the Subcontractor shall not relieve the Subcontractor from responsibility for unauthorized changes, deviations, or omissions or for errors of any sort in its drawings.

24. **LICENSES AND FEES** – Subcontractor shall be responsible for all taxes, permits, licenses, and fees necessary to perform its work, including any increase therein, if any, during the life of the Subcontract.

25. **LABOR FORCE** – Subcontractor shall be responsible for performance regardless of any interference of any trades council or other labor or union organization. Any work stoppage by employees which will unreasonably delay the work will be a breach of the Subcontract subject to the rights set forth in Paragraph 15.

26. **NONDISCRIMINATION** – Subcontractor shall not discriminate against any employee or applicant for employment, advancement, transfer, layoff, or termination because of race, religion, color, sex, or national origin. All Equal Opportunity or affirmative action requirements of the Prime Contract shall be obligations of the Subcontractor.

27. **SUPERINTENDENCE** – Subcontractor shall employ on the jobsite a competent Superintendent, satisfactory to DAVIS/HRGM with full authority to act on Subcontractor's behalf. DAVIS/HRGM shall have the right to require replacement because of incompetence.

28. **PATENT INFRINGEMENT** – Subcontractor shall indemnify DAVIS/HRGM from any use or infringement of patents.

29. **TERMINATION FOR CONVENIENCE** – DAVIS/HRGM shall have the right to terminate this agreement for its own convenience for any reason by giving notice of termination effective upon receipt thereof by Subcontractor. Termination for default under Paragraph 15, if wrongfully made, shall be treated as a termination for convenience. Settlement of the contract shall be accomplished in accordance with the provisions of the Termination for Convenience clause in the Prime Contract. If not, the Subcontractor shall be paid only the actual cost for work and labor in place, plus fifteen percent (15%), or a pro rata percentage of the Subcontract equal to the percentage of completion, whichever is less. Subcontractor shall not be entitled to anticipated profits on unperformed portions of the work.

30. **ASSIGNMENT** – No assignment hereunder is allowed without written approval of DAVIS/HRGM.

31. **NOTICES** – All notices required under this subcontract or the Prime Contract shall be addressed to Contractor's office located at 151 T Street NE, Washington, DC 20005. Notices required by the various provisions of the Prime Contract (not otherwise dealt with herein) shall be due in DAVIS/HRGM's office in one-half (1/2) the time specified in the Prime Contract so that DAVIS/HRGM will have sufficient time to forward its notice within the required period. Failure of Subcontractor to forward notices in a timely manner as required by the various equitable adjustment provisions of the Prime Contract shall operate to waive its rights to any such adjustment if the Owner rejects the claim.

32. **OWNER APPROVAL** – This Agreement is contingent upon Subcontractor or its product being approved by the Owner. If a disqualification occurs because of failure to comply with and strictly fulfill the obligations herein, said failure shall be deemed a breach by the Subcontractor. Any other rights of disqualification by Owner shall render this Agreement null and void.

33. **RECITATION AND SEVERABILITY** – Attachments are part of this Agreement. If this Agreement is retained by Subcontractor without executing and returning same within ten (10) days, it shall be deemed accepted; however, acceptance in writing is a condition precedent to payment due hereunder. The Subcontractor shall not deal directly with or work directly for Owner. This Instrument is the entire Agreement between the parties. If any provision herein is held to be invalid by any competent court, the remaining Agreement shall survive. This Agreement shall control any inconsistency in any documents referred to or incorporated by reference.

34. **OSHA** – Subcontractor shall comply with OSHA and State-equivalent standards and requirements and shall indemnify DAVIS/HRGM from any failure to do so, including fines and abatement costs and delays to project. Failure to comply shall be a breach of contract, subject to the provisions of Paragraph 15.

_Robert W. Perrow_   This Agreement the day and year first written above.

Robert W. Perrow

Division Manager, Electrical
Title

Davis/HRGM Joint Venture

_Henry Ball_  Project Executive
Title

Subcontractor to sign and return both copies of the subcontract to the contractor. DAVIS/HRGM will then sign and return one copy for the Subcontractor's files.