IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA ex rel. COMBUSTIONEER CORPORATION<br><br>Plaintiff,<br><br>THE DAVIS/HRGM JOINT VENTURE, et al.<br><br>Defendants. | Case No.: 1:05CV01474 PLF |

## DEFENDANTS' MOTION TO STAY
## LITIGATION PENDING ARBITRATION

COMES NOW Defendants the Davis/HRGM Joint Venture (the "Joint Venture"), James G. Davis Construction Corporation ("Davis"), HRGM Corporation ("HRGM"), Fidelity and Deposit Company of Maryland ("Fidelity"), and Zurich American Insurance Company ("Zurich") (collectively "Defendants"), by counsel, and pursuant to 9 U.S.C. § 3 jointly move this Court for an Order staying these proceedings pending arbitration and further state as follows:

1.  The Joint Venture is the prime contractor for the construction of the McKinley Technical High School in Washington, D.C., a project administered by the United States Army Corps of Engineers. (Federal Amended Complaint at ¶¶ 5 and 9.)[1]

2.  Plaintiff Combustioneer Corporation ("Plaintiff" or "Combustioneer") entered into a written subcontract in the amount of $5,854,125 with the Joint Venture (the "Subcontract"). (Federal Amended Complaint at ¶ 11, Ex. B.)

---

[1] Plaintiff has filed two documents styled "Amended Complaint" with the Court. Plaintiff, consistent with Fed. R. Civ. P. 15, filed its first "Amended Complaint" as a matter of right and without leave of the Court on or about August 19, 2005. Plaintiff then filed a second "Amended Complaint" on or about September 29, 2005. In violation of Fed. R. Civ. P. 15, Plaintiff filed its second "Amended Complaint" without seeking leave of the Court. Because the paragraph numbering has not changed between the two Amended Complaints, the citations are accurate to both Amended Complaints and this Motion applies equally regardless of which Amended Complaint applies.

3. By its Amended Complaint, Combustioneer alleges that it performed its work under the Subcontract, including various extras or changes, and that it is due money as a result of various and sundry impacts. (Federal Amended Complaint at ¶¶ 1-56.) Defendants deny any money is due to Plaintiff under the Subcontract, the Payment Bond, or otherwise.

4. Combustioneer further invokes the Miller Act and also seeks recovery against the payment bond sureties, Fidelity and Zurich. (Federal Amended Complaint at ¶¶ 46-52.)

5. Plaintiff has attached the written Subcontract between Plaintiff and the Joint Venture to the Amended Complaint as Exhibit B. The Subcontract contains a "Disputes" provision at Article 19, which states:

> Disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract. Subcontractor shall have the right to exercise those rights at its sole cost and shall be bound thereby. DAVIS/HRGM shall have no direct liability except to give Subcontractor opportunity to exercise rights in the Prime Contract. *Disputes with Davis/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association.* Disputes shall not interfere with the progress of the job. Work shall proceed as ordered, subject to claim.

(Emphasis added.)

6. The disputed allegations, as asserted by Plaintiff in its Amended Complaint, constitute disputes with the Joint Venture, which by the terms of the Subcontract "Disputes" clause must be resolved by arbitration.[2]

---

[2] Many of Plaintiffs' claims (although pled against Davis/HRGM) appear to involve disputes arising out of Owner acts, omissions, or responsibilities for which Plaintiff has failed to follow, among other provisions, the exhaustion and damages limitations provisions of the parties' disputes clause. Defendants have filed this Motion to Stay Pending Arbitration as Plaintiff improperly has stated such claims directly against Davis/HRGM. Defendants, by this Motion, do not waive Plaintiff's failure to follow the dispute processes set forth in the Subcontract, Plaintiff's execution of numerous valid releases without reservation, Plaintiff's waiver through failing to timely file notice of the purported claims, accord and satisfaction based on executed and paid change orders, the seemingly unjustified total cost approach to the claim, the lack of factual support and adequate costing data for the claim, defective cost and pricing data, the Subcontract's express damages limitations provisions, or any other procedural or substantive defense available.

7. Unless and until the disputes are resolved in favor of Plaintiff by arbitration, *Plaintiff cannot assert the existence of debt due from the Joint Venture and the Joint Venture is not so indebted to Plaintiff.* By its terms, the Payment Bond cannot be invoked *so long as the Joint Venture has made proper payments in accordance with its Subcontract obligations.* Thus, absent a determination by arbitration adverse to the Joint Venture, neither the Joint Venture nor Fidelity or Zurich (whose obligations are derivative to the Joint Venture) are answerable to Plaintiff's claims.

8. Since the Subcontract requires arbitration, under well-settled federal law, the Federal Arbitration Act requires a stay of these proceedings in their entirety pending arbitration between Plaintiff and the Joint Venture.

WHEREFORE, for all of the reasons stated herein, and as more particularly set forth in the attached Defendants' Memorandum in Support of Their Motion to Stay Litigation Pending Arbitration, Defendants jointly move this Court for an Order staying this action pending arbitration.

Dated: September 30, 2005

Respectfully submitted,

HOLLAND & KNIGHT LLP

Of counsel:
J. Richard Margulies
Law Offices of J. Richard Margulies
One Church Street, Suite 303
Rockville, Maryland 20850
Telephone: (301) 738-2470
Fax: (301) 738-3705

/s/ Craig A. Holman
Craig A. Holman (D.C. Bar No. 447852)
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006
Telephone: (202) 955-3000
Fax: (202) 955-5564

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA ex rel. COMBUSTIONEER CORPORATION<br><br>Plaintiff,<br><br>THE DAVIS/HRGM JOINT VENTURE, et al.<br><br>Defendants. | Case No.: 1:05CV01474 PLF |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO STAY LITIGATION PENDING ARBITRATION**

Defendants the Davis/HRGM Joint Venture (the "Joint Venture"), James G. Davis Construction Corporation ("Davis"), HRGM Corporation ("HRGM"), Fidelity and Deposit Company of Maryland ("Fidelity"), and Zurich American Insurance Company ("Zurich") (collectively "Defendants"), by counsel and for their Memorandum in Support of Defendants' Motion to Stay Litigation Pending Arbitration, state as follows:

**I.     FACTUAL BACKGROUND**

1.     Defendant the Joint Venture is the prime contractor for the construction of the McKinley Technical High School in Washington, D.C., a project administered by the United States Army Corps of Engineers. (Federal Amended Complaint at ¶¶ 5, 9.)

2.     By its Amended Complaint, Plaintiff Combustioneer Corporation ("Plaintiff" or "Combustioneer") alleges that it entered into a written subcontract in the amount of $5,854,125 with the Joint Venture (the "Subcontract"), that it performed its work under the Subcontract, including various extras or changes, and that it is due money as a result of various and sundry

impacts. (Federal Amended Complaint at ¶¶ 1-56.) (Defendants deny that Plaintiff is due any money under the Subcontract, the Payment Bond, or otherwise.)

3. Plaintiff further invokes the Miller Act and seeks recovery against the Joint Venture and the payment bond sureties, Fidelity and Zurich. (Federal Amended Complaint at ¶¶ 46-52.)

4. Plaintiff has attached the written Subcontract between Plaintiff and the Joint Venture to the Amended Complaint as Exhibit B. (Federal Amended Complaint at Ex. B.) The Subcontract contains a "Disputes" provision at Article 19, which states:

> Disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract. Subcontractor shall have the right to exercise those rights at its sole cost and shall be bound thereby. Davis/HRGM shall have no direct liability except to give Subcontractor opportunity to exercise rights in the Prime Contract. *Disputes with Davis/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association.* Disputes shall not interfere with the progress of the job. Work shall proceed as ordered, subject to claim.

(*Id.* (Emphasis added.))

## II. ARGUMENT

### A. The Federal Arbitration Act Governs The Subcontract's Arbitration Provision.

The Federal Arbitration Act provides, in pertinent part:

> A written provision in any maritime transaction *or a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, of an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added.) The Supreme Court has held that Section 2 of the Federal Arbitration Act is a congressional statement of federal policy favoring arbitration agreements and

2

the effect of the Section is to create a body of federal substantive law of arbitrability applicable to any arbitration agreement within coverage of the Act. *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Southland Corp. v. Keating*, 465 U.S. 1 (1984) (Congress did not intend to limit the Federal Arbitration Act to disputes subject only to federal court jurisdiction; the body of federal substantive law developed out of application of the Act is applicable in State and Federal courts alike).

In determining the applicability of the Federal Arbitration Act, the salient issue is thus whether the subject subcontract is one "evidencing a transaction involving commerce." *See* 9 U.S.C. § 2. According to the Supreme Court, the "transaction involving commerce" test is not a quantitative test, but rather a qualitative test and "[a] contract for the purchase of a single can of paint may evidence a transaction in interstate commerce ..." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 n.7 (1967).

Here, the Subcontract unequivocally evidences a transaction involving commerce. (Federal Amended Complaint at Ex. B.) Plaintiff is a Maryland corporation with its principal place of business in Maryland. (*Id.*) Plaintiff actively prosecuted this project in the District of Columbia. (Federal Amended Complaint at ¶¶ 5, 12.) Many of Plaintiff's employees reside in Maryland or Virginia and traveled to the District of Columbia to perform Plaintiff's work at McKinley Technical High School. (*See* Redacted Combustioneer Certified Payrolls, Ex. 1 (evidencing 15 of the 18 project workers listed on the two pages reside in Maryland or Virginia and traveled to the District of Columbia to work on the Project).) Plaintiff purchased numerous items of equipment from out of state suppliers for incorporation into this District of Columbia based project including, by way of example: lighting fixtures from Cooper Lighting located in Peachtree City, Georgia (Fixture Cuts, Ex. 2); emergency light fixtures from Lithonia Lighting

3

located in Decatur, Georgia (Fixture Cuts, Ex. 3); and IT Boxes from Hubbell Incorporated located in Stonington, Connecticut (Fixture Cuts, Ex. 4). Under the Supreme Court's observation in *Prima Paint, supra*, the Subcontract for the electrical work at McKinley Technical High School clearly evidences "a transaction involving commerce."

      B.      **Under The Substantive Law Of The Federal Arbitration Act, The Court's Consideration Is Narrowly Restricted To Whether An Agreement Exists To Arbitrate The Dispute Between The Parties.**

Under the Federal Arbitration Act, the courts are assigned the limited role of ascertaining whether the dispute is a claim which on its face is one governed by the agreement to arbitrate. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967). The court does not inquire into the merits of the controversy. *Id*. It makes a threshold inquiry only as to whether the contract's arbitration provisions "arguably" cover the dispute. *Id*. The court's function is limited to ascertaining whether the claim is one which on its face is covered by the contractual arbitration provision. *Id*. "If the issues presented are on their face referable to arbitration under the parties' agreement, the inquiry of the court is at an end." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir.1983); *see also Bristol Farmers Mkt. v. Arlen Realty*, 589 F.2d 1214 (3rd Cir. 1978); *Seaboard Coast Line R.R.Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir. 1977); *Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304, 1309 (1st Cir.1973).

As noted above, Plaintiff agreed in the Subcontract that "*Disputes with Davis/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association*." (Federal Amended Complaint at Ex. B ¶ 19 (italics added).) Plaintiff's disputed allegations against the Joint Venture, by the terms of the Subcontract, must be resolved by

located in Decatur, Georgia (Fixture Cuts, Ex. 3); and IT Boxes from Hubbell Incorporated located in Stonington, Connecticut (Fixture Cuts, Ex. 4). Under the Supreme Court's observation in *Prima Paint, supra*, the Subcontract for the electrical work at McKinley Technical High School clearly evidences "a transaction involving commerce."

    B.    **Under The Substantive Law Of The Federal Arbitration Act, The Court's Consideration Is Narrowly Restricted To Whether An Agreement Exists To Arbitrate The Dispute Between The Parties.**

Under the Federal Arbitration Act, the courts are assigned the limited role of ascertaining whether the dispute is a claim which on its face is one governed by the agreement to arbitrate. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967). The court does not inquire into the merits of the controversy. *Id*. It makes a threshold inquiry only as to whether the contract's arbitration provisions "arguably" cover the dispute. *Id*. The court's function is limited to ascertaining whether the claim is one which on its face is covered by the contractual arbitration provision. *Id*. "If the issues presented are on their face referable to arbitration under the parties' agreement, the inquiry of the court is at an end." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir.1983); *see also Bristol Farmers Mkt. v. Arlen Realty*, 589 F.2d 1214 (3rd Cir. 1978); *Seaboard Coast Line R.R.Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir. 1977); *Warren Brothers Co. v. Cardi Corp.*, 471 F.2d 1304, 1309 (1st Cir.1973).

As noted above, Plaintiff agreed in the Subcontract that "*Disputes with Davis/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association*." (Federal Amended Complaint at Ex. B ¶ 19 (italics added).) Plaintiff's disputed allegations against the Joint Venture, by the terms of the Subcontract, must be resolved by

arbitration. Until the resolution of dispute occurs, Plaintiff cannot properly assert in Court the existence of a Joint Venture debt, and the Joint Venture is not so indebted to Plaintiff.

>   **C.     If The Court Finds An Agreement Exists To Arbitrate The Dispute, Then It Must Stay The Subject Litigation.**

Section 3 of the Federal Arbitration Act provides, in pertinent part, that:

> If any suit … be brought in any of the courts of the United States *upon any issue referable to arbitration under an agreement in writing for such arbitration*, the court in which such suit is pending, upon being satisfied that the issue involved in such suit … is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant of the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added.) The language of the statute is clear and unambiguous. *Agostini Bros. Bldg. Corp. v. U. S. ex rel. Virginia-Carolina Elec. Works, Inc.*, 142 F.2d 854, 856 (4th Cir. 1944). As the Court of Appeals for this circuit succinctly observed after reciting the statutory provision:

> Thus, if arbitration is indicated by the contract, then a stay is required by the statute. As the District Court implicitly recognized, therefore, the only question before it was whether Pearce had agreed to arbitrate his claim against Hutton Group.

*Pearce v. E. F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987); *see also LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 902 (D.C. Cir. 1998). Plaintiff has agreed that its "Disputes with Davis/HRGM shall be resolved by arbitration in accordance with the rules of the American Arbitration Association." (Federal Amended Complaint at Ex. B ¶ 19.) Having so agreed, it cannot maintain this action without first proceeding to arbitration.

### D. Plaintiff's Invocation Of The Miller Act Does Not Prevent A Stay Of The Litigation In Its Entirety.

The federal case law finds that payment bond suits should be stayed pending arbitration if a subcontract clause requires arbitration of disputes among the contractor and subcontractor. *See United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 708 (2nd Cir. 1966) where the Court stated:

> There is nothing in the language or the legislative history of the Miller Act that indicates that the Congress intended Section 2(b) to do more than regulate the locality of actions commenced pursuant to Section 2(a) of the Act, supra. There is certainly no language or legislative history which indicates that Congress meant to prohibit a materialman from voluntarily substituting the mechanisms of arbitration for his right to proceed directly to a federal court. On the other hand, the United States Arbitration Act, supra, when it is applicable, quite clearly is broad enough to include Miller Act suits within its scope, and, with equal clarity, it gives the parties an enforceable right to agree to refer to arbitration differences arising under their contract.

And then opined:

> [W]e think it clear that in actions arising under a law of the United States, like the Miller Act, Section 3 of the Arbitration Act authorizes a federal court to stay proceedings pending arbitration not only when the arbitration agreement is validated by Section 2 of the Arbitration Act but also when the agreement to arbitrate is validated by applicable state law. Unquestionably, Congress has power to regulate the conduct of lawsuits brought in federal forums when the substantive rights of parties arise from federally-created rights and are governed by federal law; in Section 3 of the United States Arbitration Act Congress has exercised that power.

*Id.* at 709; *see also U.S. ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009 (5th Cir. 1976); *Agostini Bros. Bldg. Corp. v. U.S. ex rel. Virginia-Carolina Elec. Works, Inc., supra; U.S. ex rel. DeLay & Daniels, Inc., v. American Employers Ins, Co.*, 290 F.Supp. 139 (D.S.C. 1968); *U.S. ex rel. Industrial Eng'g. & Metal Fabricators, Inc. v Eric Elevator Corp.*, 214 F. Supp. 947 (D. Mass. 1963).

By its terms, Plaintiff cannot invoke the Payment Bond *so long as the Joint Venture has made proper payments in accordance with its contract obligations*. (Federal Amended Complaint at Ex. A.) Thus, absent a determination in arbitration adverse to the Joint Venture, neither the Joint Venture nor Fidelity and Zurich (whose obligations are derivative of the Joint Venture) are answerable to Plaintiff's claims.

Among the factors influencing the Court of Appeals' decision in *United States ex rel. Capolino Sons, Inc., supra*, was the United States Supreme Court's use of *Agostini Bros. Bldg. Corp., supra*, (a decision staying a Miller Act suit pending arbitration):

> To be sure, the Supreme Court has held that certain disputes, although seemingly within the scope of the United States Arbitration Act, are nevertheless, inappropriate for arbitration. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The Court recognized in that very case, however, that disputes involving nothing more than the rights and liabilities of business concerns under ordinary business contracts were proper subjects for arbitration. *Id*. at 435, 74 S.Ct.182. Indeed it is significant that as an illustration of a dispute properly arbitrable, the Court in *Wilko v. Swan, supra* at 435 n. 21, 74 S.Ct. 182, cited *Agostini Bros. Bldg. Corp. v. United States on Behalf of and for the Use of Virginia-Carolina Elec. Works, Inc.*, 142 F.2d 854 (4th Cir. 1944), a case in which the Fourth Circuit had held that a suit brought under the Miller Act could be stayed pending arbitration.

*United States ex rel. Capolino Sons, Inc., supra*, 364 F.2d at 708. The Court, accordingly, should stay the litigation as to all parties and all counts.

### III. CONCLUSION

Plaintiff, in its written Subcontract with the Joint Venture, agreed that its disputes with the Joint Venture would be resolved by arbitration. Unless and until the dispute between Plaintiff and the Joint Venture over the debt alleged by Plaintiff is resolved by arbitration in favor of Plaintiff, no debt exists for purposes of the Subcontract or the Payment Bond. The clear and unambiguous language of the Federal Arbitration Act, 9 U.S.C. § 3, requires that this Court

stay the lawsuit brought by Plaintiff pending arbitration of the disputes regarding what if anything is due Plaintiff for the work performed.

For all of the reasons stated herein, Defendants respectfully request that this Court stay the subject action in its entirety pending arbitration between the Plaintiff and Joint Venture as required by the Subcontract.

Dated: September 30, 2005                    Respectfully submitted,

                                             HOLLAND & KNIGHT LLP

Of counsel:                                  /s/ Craig A. Holman
J. Richard Margulies                         Craig A. Holman (D.C. Bar No. 447852)
Law Offices of J. Richard Margulies          2099 Pennsylvania Ave., N.W., Suite 100
One Church Street, Suite 303                 Washington, D.C.  20006
Rockville, Maryland  20850                   Telephone:  (202) 955-3000
Telephone: (301) 738-2470                    Fax: (202) 955-5564
Fax: (301) 738-3705

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a true and correct copy of the foregoing Motion and supporting documents to be served by electronic mail this 30th day of September 2005 on:

>John E. Coffey
>REEDSMITH
>3110 Fairview Park Drive, Suite 1400
>Falls Church, Virginia  22042

>/s/ Craig A. Holman
>Craig A. Holman

# 3257406_v2